## Case No. 9,753a.

### MOORE et al. v. The CARIBON.[1]

District Court, S. D. Florida.   Dec., 1880.

SALVAGE—NATURE OF SERVICES—COMPENSATION.

[Two of the libellants boarded a bark flying a signal of distress off Tortugas light, and found that the master and part of the crew had died of the fever, and the rest were sick, but one man being fit for duty. They piloted her to a comparatively safe anchorage, where food and assistance could be obtained, though not such as the condition of the sick required. Four days later, two pilot boats arrived, put a crew of six men on board, and brought her into port. *Held*, that the services of the first two libellants were salvage services, requiring liberal compensation, and that the services of the others was a continuing salvage service, of less merit, but entitled to a reasonable reward.]

[This was a libel by Moore and Keys and C. P. Williams and others against the bark Caribon to recover compensation for salvage services.]

W. C. Maloney, Jr., and G. B. Patterson, for libellants.

L. W. Bethel, for respondent.

LOCKE, District Judge. This vessel was discovered by two of the libellants, one light keeper at Tortugas, some eight or ten miles from that place, with a signal of distress flying. The master and two men had died during the voyage, and the rest of the crew, with one exception, were sick with the Chagres fever. The mate, who was in command, although partially recovered, was still suffering; and there was but one person on board fit for duty. The two original libellants, Moore and Keys, went on board, assisted what they could, and the next day piloted the bark into a channel, where she came to anchor in a comparatively protected place, but not a part of the harbor or one of complete security; yet it was where they could lie at anchor, and obtain assistance and nourishment from parties at Fort Jefferson. Four days after being brought in, two pilot boats, with the second libellants, arrived from Key West, their entire crews consisting of thirteen men, who all assisted in getting under way, put a crew of six on board, and brought her to that port. She had neither been pumped, nor had her decks washed down, for twenty-five days; and this the salvor crew attended to.

When first discovered and boarded by libellant Moore, this vessel was in distress, and required assistance. She was in the vicinity of dangerous navigation, a season of the year when severe weather might at any time be expected, with a disabled crew; yet the danger was not imminent, nor the services such as would justify a large compensation. Had she not been boarded by Moore, she might have continued her course, and made Key West or reached the pilot grounds of that port with no more disaster than had been encountered for the twenty-five days previous; yet the risk was continuous, and the crew so utterly unable to render such service as any hour might require that she could not be considered in a seaworthy or safe condition. When brought to anchor by Moore, although temporarily in a place of comparative safety, it cannot be said that a salvage service had been completed. The vessel was not where medical assistance or such nourishment and attendance as was required by the sick could be procured; nor could hospital accommodations be provided and a new crew obtained. She may have been temporarily safe, but she was not put into a position where she could continue her voyage or earn money for her owners. Further aid was necessary, and this

---

1 [Not previously reported.]

was provided by the second libellants from the pilot boats. This being a continuing service, on account of these facts, and that at no time between the boarding of the first libellants and the final anchoring in Key West could the vessel be said to be in a state of safety and in such a place as her needs required, the compensation should be considered as joint.

The number of salvors interested in the second libel is no measure of the necessities of the case, nor can it be used to increase a compensation. It was stated by one of the witnesses that, although five or six men could very well work the vessel, it took the entire fourteen employed to get up the anchor. I do not doubt but what the entire number were employed at that service, but that the condition of the windlass or weight of the anchor was such that it required nearly twice as many to weigh it as comprised the original crew I cannot accept. The locality where the vessel was discovered, in immediate proximity to a harbor, which she had reached without assistance, goes far to show she might have gone on and ultimately found safety without assistance. The fact that the mate had not been able to take a sight so as to calculate his whereabouts for over three weeks shows plainly past dangers; but having made land, and therefore ascertained his locality, it cannot be considered as showing present or future ones, so as to enhance an award.

Of the individual salvors, the first libellant Moore rendered the most valuable service, and should be most liberally compensated. There is no evidence as to what part was taken by Keys, but he went on board, and it is presumed rendered what assistance was required of him, although he may be, as alleged, but a boy.

Taking all the facts into consideration, I think five hundred dollars will be a fair compensation for the entire service, of which libellant Moore will receive seventy-five and Keys twenty-five dollars, and the remaining four hundred be divided between the pilot boats and crews according to the rules for dividing pilotage in ordinary cases.

The decree will follow accordingly.